UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LISA SHOW, as personal representative of
the Estate of DOUGLAS SHOW,

    Plaintiff,

v.

JODI SHADIAN, as personal representative
of the Estate of JOHN SHADIAN,

    Defendant.

_____/

Case No. 2:19-cv-209

Hon. Hala Y. Jarbou

## ORDER

This order addresses both Plaintiff's and Defendant's motions in limine to exclude opposing parties' experts. (ECF Nos. 50, 65, 79.) Plaintiff's and Defendant's decedents were involved in a fatal head-on snowmobile collision. At issue here is the admissibility of both parties' expert witnesses.

Rule 702 of the Federal Rules of Evidence governs the admission of testimony by expert witnesses. A witness can be qualified as an expert by knowledge, skill, experience, training or education. Fed. R. Evid 702. Rule 702 permits a qualified expert witness if:

> (a) the expert's scientific, technical, or other specialized knowledge would help the trier of fact to understand the evidence or to determine the fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* Trials judges must ensure that any expert testimony or evidence admitted be both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1999). "The inquiry envisioned by Rule 702" is "a flexible one." *Id.* at 594. "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id.* Rule 702 is subject to Rule 403, which permits a court to exclude otherwise relevant evidence "if its probative value is substantially

outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The Supreme Court identified several factors for district courts to consider when evaluating scientific expert testimony, though it also stressed that there is no "definitive checklist or test." *Daubert*, 509 U.S. at 590. These factors include: "the testability of the expert's hypotheses (whether they can be or have been tested), whether the expert's methodology has been subjected to peer review, the rate of error associated with the methodology, and whether the methodology is generally accepted within the scientific community." *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000) (citing *Daubert*, 509 U.S. at 593-94). When it comes to evaluating non-scientific fields that are "technical or "specialized" in nature, these factors may be applied, but are not mandatory in every case. *United States v. Mallory*, 902 F.3d 584, 594 (6th Cir. 2018) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150-51 (1999)). The proponent of expert testimony has the burden of establishing its admissibility. Fed. R. Evid. 702 advisory committee's notes to 2000 amendment; *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

In general, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's notes to 2000 amendment. Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595. Nevertheless, while the qualification requirement under Rule 702 is a liberal one, the court will not accept a witness as an expert "simply because he claims to be." *Pride*, 218 F.3d at 577; *see also Kumho Tire Co.,* 526 U.S. at 157 ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

**I. Plaintiff's Motion to Exclude Testimony or Evidence of Witness Bill Uhl (ECF No. 50)**

Plaintiff seeks to exclude any testimony or evidence from Defendant's expert witness Bill Uhl. Plaintiff contends that Uhl is not qualified in the field of accident reconstruction, crash dynamics and human factors as he has not had any specialized training or education, certifications, or association membership in these fields. Defendant presents Uhl as an "expert in snowmobiles and off-road vehicles or off highway vehicles . . . including mechanical subjects such as components, operation, safety and off road accidents." (ECF No. 60, PageID.623.)

As discussed in Uhl's deposition, Uhl has no formal education or training in engineering, accident reconstruction, or human factors, and his highest level of education is a high school diploma. (ECF No. 60-4, PageID.692.) The basis for Uhl's qualifications as an expert relies solely on his experience. Uhl has worked as an off-road vehicle operator instructor and consultant for government agencies and public companies for several decades. (ECF No. 60-2, PageID.676-8.) In that role, he has created and taught courses on the safe operation of off-road vehicles, as well as courses to prepare instructors in training operators of off-road vehicles. (*Id.*) Uhl has a couple decades worth of experience with trail design, construction, and maintenance. (*Id.*)

Uhl has stated that he has no formal education or training in crash reconstruction, nor has he taken any courses in this field, but claims his training comes from "his personal research" and "the reverse engineering aspect of doing product testing development and doing crash reconstruction for years." (ECF No. 60-4, PageID.693.) However, nowhere in Uhl's extensive CV is there detail on his experience with accident reconstruction. Uhl claims that he has been "certified in the court system to speak about human factors, accident reconstruction and so forth," (*id.*, PageID.694) but neither Uhl nor Defendant can point to a case where his qualifications in crash reconstruction or human factors were contested and a court found that Uhl was qualified to speak on these subjects. Further, Defendant acknowledges that Uhl's expertise is distinguishable

3

from that of traditional motor vehicle accident reconstruction experts. (ECF No. 60, PageID.623.) Defendant also points out that characterizing Uhl's opinions as "solely of an 'accident reconstruction' nature" is improper. (*Id.*, PageID.624.) Defendant claims that Uhl is "qualified with years of snowmobile accident evaluation experience;" however, Defendant provides no support for that claim. (*Id.*)

A witness can be qualified by experience, but "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's notes to 2000 amendment. When questioned about his methodology on determining the angle of the vehicles at the time of impact, Uhl stated that he did no scientific or mathematical calculations (ECF No. 60-4, PageID.701), nor did he do any recreations, animations or diagrams of the scene. (*Id.*, PageID.699, 706.) His opinion was based on a "visual understanding from being a fabricator" and that he "used a different method than doing all kinds of math calculations," relying instead on his "experience working with equipment for . . . [about] seventy years." (*Id.*, PageID.701.) In describing his experience as a fabricator, Uhl states "my expertise is in building things, and as you're fabricating metals, you learn those kinds of principles of the structure of the metal that you're fabricating. . . you have to understand your metals to be able to fabricate . . . you have to have a working knowledge of how those materials will interface with other things." (*Id.*, PageID.697.) The Court is not persuaded that the witness has adequately explained how his experience as a fabricator is a sufficient basis for his opinion on accident reconstruction. Uhl has repeatedly stated that his methodology comes from his experience and visual observations. (*See, e.g., id.*, PageID.702, 706 ("My experience– it's like reading a book.").) This is a methodology that cannot be tested, has not been subject to

4

peer review, with a rate of error that cannot be calculated, nor can it be said to be generally accepted by the scientific community.

The Court finds that Uhl is qualified as an expert in snowmobiles, off road vehicles, off highway vehicles, and the mechanical components, operation and safety of these vehicles, but is not qualified as an expert in off road accidents or the field of accident reconstruction, crash dynamics and human factors. Plaintiff's motion is granted in part and denied in part.

**II. Defendant's Motion in Limine Regarding Plaintiff's Accident Expert Timothy Robbins (ECF No. 65)**

Defendant seeks to exclude expert testimony from Timothy Robbins, on the grounds that his testimony is not based in evidence and that he lacks experience specifically with snowmobile collisions. Robbins has worked with the Michigan State Police for fifteen years, ten of those as a Traffic Crash Reconstruction Specialist. Since 2000, he has been a Regional Police Academy Instructor for traffic crash investigation at Delta Community College and has taken about forty or more courses related to crash reconstruction amounting to more than 1000+ hours of training. He is accredited with the Accreditation Commission for Traffic Accident Reconstruction. Robbins has been a Traffic Crash Reconstruction Expert with his company M-Crash Group, LLC since 2003. The Court finds Robbins is qualified to testify as an accident reconstruction expert.

As to snowmobile collisions, as Plaintiff points out, Robbins stated that with the Michigan State Police, he has dealt with "automobile, semi truck, ORV, ATV, UTV, snowmobile, boat crashes." (ECF No. 78, PageID.1036.) When an expert is qualified in a general field, issues of specialization within that field go to the weight and credibility of the testimony, not its admissibility. *See Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 294 (6th Cir. 2007) (referencing *First Tenn. Bank Nat'l Ass'n v. Barreto,* 268 F. 3d 319, 333 (6th Cir. 2001)).

5

Whether there is an issue with Robbins's snowmobile collision experience, it does not affect Robbins's qualification as an accident reconstruction expert.

The general standards to assess reliability comes from Rule 702: "whether the testimony is based upon 'sufficient facts or data,' whether the testimony is the 'product of reliable principles and methods,' and whether the expert 'has applied the principles and methods reliably to the facts of the case" and *Daubert*'s non-exclusive factors. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (citing Fed. R. Evid. 702). "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, [] unsupported speculation." *Id.*, at 529-30. "Experts are permitted wide latitude in their opinion, including those not based on firsthand knowledge, so long as the 'expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'" *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (quoting *Daubert*, 509 U.S. at 592).

Defendant claims that Robbins "did not explain his conclusion that the Polaris struck the Yamaha at a steep angle or that the Polaris was left of center, with any methodology." (ECF No. 66, PageID.865.) As Plaintiff points out, Robbins obtained photographs and laser scans of the snowmobiles in order to create diagrams of the accident and determined the location of the crash after visiting the scene. When asked how he determined the Polaris was left of center prior to impact, Robbins stated that it was based on "several factors . . . we have the crush profiles, the vehicle dynamics, the final rest position and rotation," which were developed from the diagram and photographs of the incident. (ECF No. 66-3, PageID.897.) Furthermore, in the portion discussing that same issue which Defendant cites as "simply speculating," Robbins stated, "I have my opinion based on the approach angles that I have on 7 of 8, Bates stamp 272, the final rest

6

positions." (ECF No. 66, PageID.867.) As Plaintiff points out, Robbins described how he determined the positioning of the vehicles:

> I did it with a visual analysis of the police photos showing how these vehicles were in relationship to the trail, how they were to each other, and then looking at perspectives, where the bodies were placed based on the photo perspectives and their relationship to the snow machines.

(ECF No. 78, PageID.1040.) This description is adequate to show that Robbins's testimony is not unsupported speculation. It is the responsibility of the jury to evaluate the expert's conclusions and to weigh the expert's evidence against the evidence presented by the parties. *Dilts v. United Grp. Servs., LLC.*, 500 F. App'x 440, 446 (6th Cir. 2012).

To the extent that Defendant is concerned that Robbins will testify to toxicology as a factor or basis for his conclusion, Robbins is limited to testifying on accident reconstruction, his qualified field of expertise.

Therefore, Defendant's motion is denied. Plaintiff's request for fees and costs is denied.

### III. Plaintiff's Motion in Limine to Exclude Testimony/Evidence of Gary McDonald (ECF No. 79)

Plaintiff seeks to exclude Defendant's expert witness Gary McDonald on similar grounds as that of Timothy Robbins. Plaintiff finds issue with McDonald's snowmobile collision experience as well as the reliability of McDonald's methodology. McDonald has similar experience with the Michigan State Police, working with accident investigation for the State for about nineteen years with eleven years in the State Police Reconstruction Unit. In 1994, McDonald established his consulting company Magnetic North Consulting. McDonald has also attended numerous (60-70+) courses, seminars, and conferences relating to accident and crash reconstruction. He is a member of the Michigan Association of Traffic Accident Investigators and the International Association of Accident Reconstruction Specialists. The Court finds that McDonald is qualified as an expert to testify on accident reconstruction. Plaintiff's issue with

7

McDonald's limited experience with snowmobile accidents goes to the weight and credibility of McDonald's testimony and not to its admissibility. *See Surles*, 474 F.3d at 294 (referencing *First Tenn. Bank,* 268 F. 3d at 333).

Plaintiff contests the reliability of McDonald's testimony on the grounds that much of his opinion is based on conjecture and inference and a lack of methodology or calculations. In coming to his conclusions, McDonald went to the scene of the incident and took elevation measurements and photographs, from which he created diagrams of the accident. Many of the factors that Plaintiff claims McDonald failed to consider (e.g. the amount of the snow on the ground on the date of the accident, the heights of the individual drivers, their sitting positions) are factors that Plaintiff's expert also did not consider or mention. Plaintiff claims McDonald failed to use any calculations or programs to determine the highest point at the general location of the accident or for his opinion on visibility on the date of the accident. The lack of calculation or methodology for these specific inquiries do not cause McDonald's complete testimony to be unreliable. These factors go to the weight and credibility of McDonald's testimony rather than to its admissibility. As the Court stated in *Daubert*, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Lastly, Plaintiff questions McDonald's methodology in reaching his conclusion concerning the angles of impact of the two snowmobiles. McDonald stated in his deposition, "Other than visual looking at it, no, and looking at final rest of how they came together and basic [sic] on the rotation. That's how I believe they rotated and that's where I put them at final rest." (ECF No. 66-5, PageID.953.) As Robbins did, McDonald based his conclusion regarding the angles of impact on his visual observation, the final rest position and the rotation of the vehicles. Similarly,

8

McDonald's description is adequate to show that his testimony is not unsupported speculation. That McDonald's opinion differs from Robbins's is not evidence that either expert's testimony is unreliable. *See Jahn*, 233 F.3d at 388 ("Experts are permitted wide latitude in their opinion").

Therefore, Plaintiff's motion is denied.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to exclude any testimony or evidence of defense witness Bill Uhl (ECF No. 50) is **GRANTED IN PART** and **DENIED IN PART**. Uhl may testify as to the operation and mechanics of snowmobiles, and the standard of care for handling them, but cannot testify as to how the accident occurred.

**IT IS FURTHER ORDERED** that Defendant's motion in limine regarding Plaintiff's accident expert Timothy Robbins (ECF No. 65) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion in limine to exclude testimony and evidence of Gary McDonald (ECF No. 79) is **DENIED**.

Dated: October 27, 2021         /s/ Hala Y. Jarbou
                                HALA Y. JARBOU
                                UNITED STATES DISTRICT JUDGE

9